DA 19-0611

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 134N

IN THE MATTER OF:

K.F. and A.F.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause Nos. DN-18-45-BN
and DN-18-46-BN
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Katy Stack, Attorney at Law, Missoula, Montana
            (for K.C.F.)

            Kelly M. Driscoll, Montana Legal Justice, Missoula, Montana
            (for S.H.)

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Katie F.
            Schulz; Assistant Attorney Generals, Helena, Montana

            Eileen Joyce, Butte-Silver Bow County Attorney, Mark Vucurovich,
            Deputy County Attorney, Butte, Montana

Submitted on Briefs:  April 29, 2020

Decided:  May 26, 2020

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 S.H. (Mother) and K.C.F. (Father) respectively appeal the judgments of the Montana Second Judicial District Court, Silver Bow County, terminating their respective parental rights to A.F. (born February 5, 2016) and K.F. (born February 16, 2018), with grant of permanent legal custody to the Montana Department of Public Health and Human Services (Department) for appropriate placement.[1] We affirm.

¶3 The Department was repeatedly involved with the parents in the two years preceding the institution of these matters based on various reports and substantiated incidents of illegal drug use (before and after the births of both children) and domestic violence in early 2018. Based on additional domestic violence incidents later in 2018, Mother's continued use of methamphetamine, and the resulting risk of physical neglect, the Department intervened in May 2018, removed the children into a protective kinship placement, and, in June 2018, filed a petition for emergency protective services, adjudication of the children as youths in need of care, and temporary legal custody.

---

[1] The separate cases for each child (DN-18-45-BN and DN-18-46-BN) are consolidated for appeal.

2

¶4 Father was not present at the initial show cause hearing due to lack of service of process. At the continued hearing a week later, both parents appeared with counsel, Father received the petition, and waived further personal service. Neither party objected that the hearing took place beyond the 20-day statutory deadline. At the adjudicatory hearing two weeks later, both parents and counsel were present and, based on the uncontested petition allegations, respectively stipulated to adjudication of the children as youths in need of care, with a six month grant of temporary legal custody to the Department. Based on the parents' stipulations and the uncontested petition allegations, the District Court adjudicated the children as youths in need of care, granted the Department temporary legal custody, and subsequently issued written findings of fact, conclusions of law, and judgment on the adjudications and grant of temporary legal custody. Neither parent subsequently objected to any aspect of the court's findings, conclusions, or judgment. The court later imposed reunification-oriented treatment plans, stipulated and signed by the Department and respective parents.

¶5 On January 11, 2019, the Department's initial grant of temporary legal custody expired without action or response from any party or the court. Forty-eight days later, the Department, the court-appointed guardian ad litem, and Mother filed a written stipulation to continuation of temporary legal custody for an additional six months, "as if it never lapsed." Without hearing, the District Court subsequently issued a written order continuing temporary legal custody *nunc pro tunc* with a six month extension. Inexplicably, neither

the stipulation, nor the ensuring court order, referenced Father, much less whether he consented. However, upon due service of the order, Father did not subsequently object.

¶6     On July 22, 2019, the Department filed petitions for termination of the parents' respective rights to A.F. and K.F. based on treatment plan failure or non-compliance. Following due notice and a combined hearing on the petitions, the District Court issued written findings of fact, conclusions of law, and judgments terminating the parents' respective rights. The scant, bare-bones judgments similarly included eight findings of fact: (1) noting the prior youth in need of care adjudications; (2) noting the birthdates of the children; (3) noting the length of their protective custody and the date of imposition of the parents' treatment plans; (4) finding that each parent had "failed all components of the treatment plan," with general reference to plan components; (5) finding that "[c]ontinuation of the parent child legal relationship will likely result in continued abuse or neglect"; (6) noting that the "Court has given primary consideration to the physical, mental, and emotional conditions and needs" of the children; (7) noting that the "Indian Child Welfare Act does not apply"; and (8) finding that the Department made reasonable preservation efforts, with reference to an enumerated list. In addition to restating several of those findings as conclusions of law, the judgments further concluded as a matter of law that the requested terminations of parental rights, with permanent legal custody to the Department for appropriate placement, would "serve[]" the best interests of each child.

¶7     District courts may terminate parental rights upon clear and convincing evidence that: (1) a child has been adjudicated as a youth in need of care pursuant to § 41-3-437,

4

MCA; (2) the parent has failed to comply with an "appropriate treatment plan" or such plan "has not been successful"; and (3) "the conduct or condition" of the parent's unfitness "is unlikely to change within a reasonable time." Sections 41-3-607 and -609(1)(f), MCA. In determining whether the conduct or condition of a parent's unfitness is unlikely to change within a reasonable time, the court *shall*, upon consideration of various statutorily enumerated considerations, *inter alia*, "enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parent[] renders the parent[] unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. We review judgments terminating parental rights pursuant to § 41-3-609(1)(f), MCA, for an abuse of discretion under the applicable requirements of Title 41, ch. 3, MCA. *In re D.E.*, 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586. In this context, an abuse of discretion occurs if the court terminates parental rights based on a material non-compliance with statutory prerequisites, a clearly erroneous finding of fact, an erroneous conclusion of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *See In re D.E.*, ¶ 21.

¶8 Mother and Father separately assert that the District Court's "reasonable efforts" finding was clearly erroneous. Father correctly points out that the "reasonable efforts" required by § 41-3-423, MCA, "is not a separate requirement for termination, [but] is a predicate [consideration] for [a] finding [under § 41-3-609(1)(f)(ii), MCA] that the conduct or condition rendering a parent unfit, unwilling, or unable to parent is unlikely to change

5

within a reasonable time." *In re R.J.F.*, 2019 MT 113, ¶ 26, 395 Mont. 454, 443 P.3d 387. Here, the parents assert that the reasonable efforts finding is erroneous because it does not account for their respective assertions that the Department failed to provide Mother "the tools necessary to make progress," she at least made partial progress on four of her five treatment plan requirements, and that the Department failed to adequately assist or make the children readily and timely available for visitation by Father. However, regardless of any conflicting evidence, the court's "reasonable efforts" finding is supported by substantial evidence on our review of the record and we are not convinced that the court misapprehended or was otherwise mistaken about the evidence. Partial compliance with treatment plan requirements is insufficient to preclude termination of parental rights under § 41-3-609(1)(f)(i) or (ii), MCA. Moreover, even if taken as true, Father's assertions regarding the shortcomings of the Department's visitation arrangements do not offset or explain how those shortcomings materially impaired or precluded him from completing the other significant requirements of his treatment plan, whether in the past or the foreseeable future.

¶9 Father asserts that the termination of his parental rights was further erroneous because the court failed to make a specific finding under § 41-3-609(1)(f)(ii), MCA, that the "conduct or condition" that rendered him "unfit is unlikely to change within a reasonable time." While the District Court inexplicably failed to make a specific finding on that essential requirement for termination, such a finding was nonetheless manifestly implied from the expressly required finding that it did make, i.e., that "[c]ontinuation of

the parent child relationship will likely result in continued abuse or neglect." *See* § 41-3-609(1)(f)(ii), MCA. The express finding, and the finding implied therefrom, were supported by substantial record evidence, and thus not clearly erroneous.

¶10    Father further asserts that the termination of his parental rights was also erroneous on two independent grounds—the court's failure to conduct a show cause hearing in 20 days as required by § 41-3-432(1), MCA, and, contrary to § 41-3-442(4)-(7), MCA, its subsequent reinstatement and continuation of temporary legal custody after a 48-day lapse without a hearing or his consent. The parents similarly assert separately that the terminations were further independently erroneous based on the court's failure to conduct a permanency hearing, and adopt a resulting permanency plan, as required by § 41-3-445, MCA. We agree that the inexplicable disregard of these express statutory requirements by the State and the District Court is alarming. However, we will not hold a court in reversible error for an error or omission that an appellant participated in, acquiesced in, or failed to object, and thereby denied the court an opportunity to rectify, particularly in the absence of a showing that the error or omission materially prejudiced the appellant's substantial rights. *In re A.A.*, 2005 MT 119, ¶¶ 26-28, 327 Mont. 127, 112 P.3d 993; *In re Marriage of Purkett*, 222 Mont. 225, 228, 721 P.2d 349, 350 (1986). Here, both parents were represented by counsel at all stages of the proceedings. They both had ample opportunity to contemporaneously object and rectify the procedural errors raised for the first time here, but did not. Neither has demonstrated that any of the unpreserved errors materially

7

prejudiced his or her substantial rights under §§ 41-3-432, -437, -438, or -609(1)(f), MCA, on the record in this case.

¶11    We hold that Mother and Father have not demonstrated that the District Court abused its discretion in terminating their respective parental rights under § 41-3-609(1)(f), MCA. We thus further decline to address their related constitutional due process assertions.

¶12    We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. It presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶13    Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE